IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

IN THE MATTER OF THE SEARCH OF

15394 HEARTHSTONE DRIVE, FOLEY, AL
36535

Case No. __19-mj-69_____

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Carolyn M. Middleton, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am investigating the activities of the Internet account utilized by TARAS HODIVSKY,

15394 Hearthstone Drive, Foley, AL 36535.  As will be shown below, there is probable

cause to believe that someone using the Internet account utilized by Hodivsky has

received, possessed, or distributed child pornography, in violation of 18 U.S.C. 2252 and

2252A.  I submit this application and affidavit in support of a search warrant authorizing

a search of Hodivsky's residence, located at 15394 Hearthstone Drive, Foley, AL 36535

(the "premises"), as further described in Attachments A and B.  Located within the

premises to be searched, I seek to seize evidence, fruits, and instrumentalities of the

forgoing criminal violations, which relate to the knowing transportation, shipment,

receipt, possession, distribution, and reproduction of child pornography.  I request

authority to search the entire premises, including the residential dwelling and any

computer and computer media located therein where the items specified in Attachment B

may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of a crime.

2. I am a Special Agent with the Federal Bureau of Investigation. I am a law enforcement officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses against the United States.  I have been employed by the FBI since January 2003.  During my tenure with the FBI, I have been assigned investigations dealing with counter-terrorism, counter-intelligence, money laundering, drug trafficking organizations, health care fraud, violent incident crimes, and violent crimes against children.  Through my training, education and experience, I have become familiar with the manner in which offenders communicate using e-mail, social media, and the internet to contact potential victims and to store transmit, share or store explicit child pornographic material.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. 2252 and 18 U.S.C. 2252A, pertaining to possession, distribution and reproduction of child pornography, have been committed by TARAS HODIVSKY.  There is also probable cause to search the premises described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## STATUTORY AUTHORITY

2

5. This investigation concerns alleged violations of 18 U.S.C. 2252 and 2252A, relating to material involving the sexual exploitation of minors.

   a. 18 U.S.C. 2252(a)(1) prohibits knowingly transporting or shipping in interstate or foreign commerce, by computer or mail, any visual depiction of minors engaging in sexually explicit conduct.

   b. 18 U.S.C. 2252(a)(2) prohibits knowingly receiving or distributing, by computer or mail, any visual depiction of minors engaging in sexually explicit conduct that has been mailed, shipped, or transported in interstate or foreign commerce. That section also prohibits knowingly reproducing any visual depiction of minors engaging in sexually explicit conduct for distribution in interstate or foreign commerce by any means, including by computer or the mail.

   c. 18 U.S.C. 2252(a)(4) prohibits possessing one or more books, magazines, periodicals, films, or other materials which contain visual depictions of minors engaged in sexually explicit conduct that have been transported in interstate or foreign commerce, or that were produced using materials that had traveled in interstate or foreign commerce.

   d. 18 U.S.C. 2252A(a)(1) prohibits knowingly mailing, transporting, or shipping child pornography in interstate or foreign commerce by any means, including by computer.

   e. 18 U.S.C. 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer.

3

      f.   18 U.S.C. 2252A(a)(3)A prohibits a person from knowingly reproducing child pornography for distribution through the mail or in interstate or foreign commerce by any means, including by computer.

      g.   18 U.S.C. 2252A(a)(3)(B) prohibits knowingly advertising promoting, presenting, distributing, or soliciting through the mail, or using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means any material in a manner that reflects the belief or is intended to cause another to believe that the material is or contains a visual depiction of an actual minor engaging in sexually explicit conduct, or an obscene visual depiction of a minor engaging in sexually explicit conduct.

6.  The following definitions apply to this Affidavit and Attachment B:

      a.   "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

      b.   "Child Pornography" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital iimage, computer image, or computer-generated imiage that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. See 18 U.S.C. 2256(8).

4

c. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." See 18 U.S.C. 1030(e)(1).

d. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

e. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perfom1 certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or

"booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

f.   "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

g.   "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

h.   "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

i.   "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

j.   "Peer-to-peer file-sharing" (P2P) is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up files on a computer to be shared with others running compatible P2P software. A user obtains files by opening the P2P software on the

6

user's computer, and conducting searches for files that are currently being shared on another user's computer.

k. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2)(A).

l. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

m. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer

buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

7.  Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have revolutionized the manner in which child pornography is produced and distributed.

8.  Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

9.  Child pornographers can transpose photographic images from a camera into a computer-readable format with a scanner. With digital cameras, the images can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

10. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

11. The Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

12. Through my training an experience I know that, typically, collectors of child pornography store such images on electronic devices and removable digital storage devices in places where ease of access may be had and in which privacy is nevertheless maintained. It is not uncommon for collectors of child pornography to secrete digital devices on which child pornography is stored in spaces where the collector has significant control and the devices are unlikely to be found by others. Such places may be within the collector's home, automobile, office, or other spaces where they have a significant measure of control and unique access.

13. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Gmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

14. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by

9

saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or TSP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

15. A growing phenomenon on the Internet is peer-to-peer file-sharing (P2P).

16. The latest evolution of P2P software is a program that allows a user to set up his own private P2P network of contacts. File-sharing through this new and publicly available P2P file-sharing program is limited only to other users who have been added to a private list of "friends." A new user is added to a list of friends by request. Acceptance of a friend request will allow that new user to download files from the user who sent the friend request. The new user can then browse the list of files that the other user has made available to download, select desired files from this list, and download the selected files. The downloading of a file occurs through a direct connection between the computer requesting the file and the computer containing the file.

17. One aspect of P2P file sharing is that multiple files may be downloaded in parallel, which permits downloading more than one file at a time.

10

18. A P2P file transfer is assisted by reference to an Internet Protocol (IP) address. This address, expressed as four sets of numbers separated by decimal points, is unique to a particular computer during an online session. The IP address provides a unique location making it possible for data to be transferred between computers.

19. Third-party software is available to identify the IP address of the P2P computer sending the file. Such software monitors and logs Internet and local network traffic.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

20. Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

   a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

11

b.  Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

21. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

22. Furthermore, because there is probable cause to believe that the computer and its storage devices are all instrumentalities of crimes, within the meaning of 18 U.S.C. §§ 2251 through 2256, they should all be seized as such.

12

## CASE BACKGROUND AND PROBABLE CAUSE

23. On January 17, 2019, Summerdale Police Department (SPD), located in Summerdale, AL, Detective John Gleaton attended a forensic interview at the Baldwin County Child Advocacy Center.  The interview was conducted following a report received by Alabama Department of Human Resources (DHR) involving a seven year old female victim, hereafter referred to as MG.  The allegation received by DHR concerned a family friend, TARAS HODIVSKY, hereafter referred to as HODIVSKY, who had possibly digitally penetrated the child's vagina.  MG lives with her mother and her father is deceased.  MG's mother rents an apartment owned by HODIVSKY'S family, which is attached to a large automobile shop in which HODIVSKY regularly works on his race cars.  There is a door from the apartment where MG lives with her mother into the automobile shop and MG has regular access to the shop.

24. According to AL DHR reports, MG disclosed to Carol Brown, a friend of MG's mother, about a recent incident in which HODIVSKY went into MG's bedroom and put his hands into her pants and digitally penetrated her vagina with his finger.  Brown reported the incident to MG's mother, who in turn, reported the incident to officials that referred the case to AL DHR.  AL DHR scheduled MG for the forensic interview on January 17, 2019.

25. According to SPD records, MG is an articulate, seemingly well-adjusted child of age appropriate height, weight and developmental status.  When asked by the interviewer, MG was able to respond to questions both verbally and non-verbally, using gestures.  During the interview, MG asked the interviewer, "Are we going to talk about what

13

happened to me?" Then, while still in the initial rapport-building stages of the interview, MG again brought up the subject of her sexual abuse, as described below.

26. MG described a recent incident in her bedroom that coincides with the allegation HODIVSKY had digitally penetrated her vagina. MG stated that "Junior" (the name by which MG knows HODIVSKY) touched her inside her clothes inside her panties and that it felt "nasty." MG went on to describe several earlier incidents in which HODIVSKY had "grabbed her" while she was in his shop. MG described several times when she went into HODIVSKY'S shop to give HODIVSKY a bottle of water or a Popsicle during which time HODIVSKY touched MG in a sexual manner. MG stated HODIVSKY would regularly show her his penis, and that he would "put it in her." When asked what she called a penis, she said she did not know what to call it, but gestured with her hands around her groin area. MG described to the interviewer a big chair in the shop, a black room inside an automobile trailer, and her bedroom as being the places where HODIVSKY had touched her in a sexual manner. When asked how many times HODIVSKY had done this to her, MG responded, "One hundred times."

27. MG was provided anatomic drawings of a male and female human, where she was asked to point to the places on her body where HODIVSKY touched her and where she had touched HODIVSKY. In all, MG indicated in the interview that HODIVSKY had sexually abused her multiple times by touching his fingers to her vagina, his penis to her vagina, his penis to her mouth, and his hands to her mouth and breasts.

14

28. MG described that she was in Kindergarten when she had the sexual contact with HODIVSKY, placing the time frame of these earlier incidents between September 2017 and June 2018.

29. After the interview, the AL DHR worker and forensic interviewer debriefed MG's mother about MG's disclosures of sexual abuse by HODIVSKY. MG's mother told them MG had a vaginal discharge during the time frame in question, but not knowing about the sexual abuse at the time, assumed it was a yeast infection.

30. Shortly after the forensic interview, SPD arrested HODIVSKY and he was charged in the State of Alabama with Rape 1st Degree (AL 13a-6-61) and/or Sexual Abuse of a Child Less than 12 Years Old (AL 13-6-69.1). HODIVSKY was arrested by SPD at HODIVSKY'S primary residence located at 15394 Hearthstone Drive, Foley, AL 36580. HODIVSKY had a cellular telephone on his person at the time of arrest, which was seized by SPD officers.

31. On January 24, 2019, SPD, with assistance from the Federal Bureau of Investigation (FBI) Evidence Response Team (ERT), executed a search warrant at 17807 CR 28, Summerdale, AL, which included the apartment MG shared with her mother and an automotive shop where HODIVSKY repairs his race cars. During the search of the automobile shop, a large, stuffed chair was found, along with items of clothing believed to have been worn by HODIVSKY. An Alternate Light Source (ALS) can be used to assist searchers in identifying possible bodily fluids, including semen, on an item. When exposed to the wavelengths of light emitted by the ALS, such fluids may appear to fluoresce when viewed through an orange filter. Items which fluoresce are collected by

the search team and sent to a forensic laboratory for further examination to make determination about the type of fluid and the origin thereof.  Several areas on the large chair fluoresced when exposed to the ALS, as did the inside of a button down shirt/jacket near the bottom front panel.  An upper deck located within a black, enclosed automobile carrier trailer was on the property and searched by the FBI ERT.  In this space, there was a couch which was determined to have possible bodily fluids on it, samples from which were collected.

32. The cellular telephone on HODIVSKY'S person at the time of arrest is further described as a Samsung GSM, SM-G960U Galaxy S9, IMEI: 352410092195572.  SPD obtained a warrant to search the phone and submitted the device to personnel of the Foley Police Department (FPD), located in Foley, Alabama to perform a digital extraction of the data contained on the phone.

33. The aforementioned digital forensic examination of the cellular telephone on HODIVSKY'S person at the time of arrest yielded over 14,000 still images and approximately 59 video clips saved in some capacity within the phone.  Your affiant has reviewed the results of the digital extraction of the phone.

34. Among the still images were approximately 2430 still images depicting the sexual exploitation of children.  Of those images, your affiant believes at least half of the images depicted children of pre-pubescent age engaged in sex acts or exposing their genitalia. Also found on the phone were approximately 13 downloaded video files, depicting the sexual exploitation of children.  The file paths for these images and videos suggest they

16

were stored on an SD card inserted into the phone.  A sample of the images and video files are described below:

1.  File name: LittleFamily.zip._embedded.85jpg

    a.  File path: Samsung GSM_SM-G960UGalaxyS9.zip/sdcard/Download/LittleFamily.zip/LittleFamily.zip_embedded_85.jpg

    b.  Description:  One still image of three nude, prepubescent children siting on a couch or bed, two girls are sitting on either side of a boy and the girls are reaching inward and touching the boy's penis.  The faces of all three children can be seen.

2.  File name: LittleFamily.zip_embedded_37.jpg

    a.  File path: Samsung GSM_SM-G960UGalaxy S9.zip/sdcard/Download/LIttleFamily.zip/LittleFamily.zip_embedded _37.jpg

    b.  Description:  One still image of a nude prepubescent boy laying on his back on a couch or bed with a nude prepubescent girl laying alongside him and reaching for his penis.  The faces of both children can be seen. The hand of another person not otherwise in the image can be seen reaching for the boy's penis.

3.  File name: LittleFamily.zip_embedded_31.jpg

    a.  File path: Samsung GSM_SM-G960UGalaxy S9.zip/sdcard/Download/LIttleFamily.zip/LittleFamily.zip_embedded _31.jpg

17

  b. Description:  One still image of a nude prepubescent girl laying on her back on a couch or bed with her legs spread while she is reaching below and spreading the cheeks of her buttocks with her hands.  A nude prepubescent boy is sitting in front of her with his penis exposed.  The faces of both children can been seen.

4. File name: LittleFamily.zip_embedded_54.jpg

  a. File path: Samsung GSM_SM-G960UGalaxy S9.zip/sdcard/Download/LIttleFamily.zip/LittleFamily.zip_embedded_54.jpg

  b. Description:  One still image of the groin area of a nude prepubescent boy with two young girls on either side of his penis with their tongues out and licking toward his penis.  The faces of both girls can be seen.  The face of the boy cannot be seen.

5. File name: LittleFamily.zip_embedded_41.jpg

  a. File path: Samsung GSM_SM-G960UGalaxy S9.zip/sdcard/Download/LIttleFamily.zip/LittleFamily.zip_embedded_41.jpg

  b. Description:  One still image of a nude prepubescent girl laying on her back with her legs spread exposing her vaginal area.  She is using her hands to spread the cheeks of her buttocks and labia.  Her face can be seen in the image.

6. File name: omegle 14yo boy texas.mov

  a. Length: 00h:04m:46s

    b. File path: Samsung GSM_SM-G960U Galaxy

       S9.zip/sdcard/MEGA/MEGA Downloads/50 MB

       variety/TRADE/TRADE 1/Best of Bibcam 2/omegle 14yo boy

    c. Description:  One video file depicting a teenaged boy laying on a bed,

       removing his pants and masturbating in front of the camera.  The boy's

       face can be seen in the video.

7. File name: Russianboyandgirlsex.mov

    a. Lenth: 00h:06m:44s

    b. File path: Samsung GSM_SM-G960U Galaxy

       S9.zip/sdcard/MEGA/MEGA Downloads/50 MB

       variety/boy.girl/Russianboyandgirlsex.mov

    c. Description:  One video file depicting a teenaged girl and a

       prepubescent boy who completely undress and engage in sexual

       intercourse.  Both children's faces can be seen in the video.

8. File name: B.mov

    a. Length: 00h:01m:46s

    b. File path: Samsung GSM_SM-G960U Galaxy

       S9.zip/sdcard/MEGA/MEGA Downloads/50 MG

       variety/TRADE/TRADE 1/Best of Bibcam 2/B.mov

    c. Description:  One video file in which a prepubescent male enters a

       bedroom, undresses and masturbates in front of the camera.  At the end

       of the video the boy ejaculates in front of the camera.  The boy's face

       can be seen at the beginning of the video.

9.  File name: [13yo] bibcam – blond American boy.mov

    a.  Length: 00h:08m:50s

    b.  File path: Samsung GSM_SM-G960U Galaxy

        S9.zip/sdcard/MEGA/MEGA Downloads/50 MG

        variety/TRADE/TRADE 1/Best of Bibcam 2/[13yo] bibcam – blond

        American boy.mov

    c.  Description:  One video file depicting a teenaged boy who enters a

        room, undresses completely in front of a camera exposing his penis,

        and then masturbates in front of the camera.  The boy's face can be

        seen in the video.

10. File name: (sdpa) Nuevo – hermano coje prima de 10 anos teniendo sexo

    pthc_3 by michel.mov

    a.  Length: 00h:04m:39s

    b.  File path: Samsung GSM_SM-G960U Galaxy

        S9.zip/sdcard/MEGA/MEGA Downloads/zir2/(sdpa) Nuevo –

        hermano coje prima de 10 anos teniendo sexo pthc_3 by michel.mov

    c.  Description: One video file depicting a nude possibly prepubescent

        girl engaged in vaginal intercourse and oral sex with a nude

        prepubescent boy.  The face of the girl can be seen in the video, along

        with the face of at least one other child who is watching the boy and

        girl engage in sex acts.

35. Your affiant has conducted law enforcement record searches for TARAS HODIVSKY,

    JR and determined he resides at 15394 Hearthstone Drive, Foley, AL 36535.  According

to Accurint/Lexis Nexis records, HODIVSKY purchased the property on 09/26/2018. Baldwin County Alabama Deeds and Records Department indicate on 09/26/2018 HODIVSKY signed for a mortgage for property in the Aspen Creek Subdivision in Foley, AL, within which 15394 Hearthstone Drive, Foley, AL 36535 is located.

## CONCLUSION

36. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that an individual who resides at the residence described above is involved in possession and distribution of child pornography. Your affiant respectfully submits that there is probable cause to believe that an individual residing in the residence described above has violated 18 U.S.C. §§ 2252 and 2252A. Additionally, there is probable cause to believe that evidence of criminal offenses, namely, violations of I8 U.S.C. §§2252 and 2252A, is located in the residence described above, and this evidence, listed in Attachment B to this affidavit, which is incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

37. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Carolyn M. Middleton

Special Agent

FEDERAL BUREAU OF
INVESTIGATION

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS __7th__
DAY OF MARCH 2014

P. Bradley Murray

Digitally signed by P. Bradley Murray
DN: cn=P. Bradley Murray, o, ou=United States
Magistrate Judge,
email=bradley_murray@alsd.uscourts.gov, c=US
Date: 2019.03.07 15:53:04 -06'00'

P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE