## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TARAS HODIVSKY, JR.,** | ) | |
| **BOP Reg. # 08493-003,** | ) | |
|    **Movant,** | ) | |
| | ) | **CIVIL ACTION NO. 1:21-00529-KD-N** |
| **v.** | ) | |
| | )**CRIMINAL ACTION NO. 1:19-00080-KD-N** |
| **UNITED STATES OF AMERICA,** | ) | |
|    **Respondent.** | ) | |

## <u>ORDER</u>

Taras Hodivsky, Jr., a federal prisoner proceeding without counsel (*pro se*),
filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255
dated November 22, 2021 (Doc# 117) seeking relief from the judgment entered
against him in the above-numbered criminal action.[1] This action is now before the
Court on Hodivsky's motion (Doc# 117), memorandum in support (Doc# 117-1), the
United States' response (Doc# 122), Hodivsky's reply (Doc# 125), and the United
States' supplemental response (Doc# 131).

Having reviewed the parties' submissions and other relevant portions of the
record in accordance with Rule 7 and 8(a) of the Rules Governing Section 2255
Proceedings, the Court finds that neither expansion of the record nor an evidentiary

---

[1] Unless otherwise indicated, all "Doc#" citations herein refer to the docket of the
above-numbered criminal action.  The companion civil action has been opened for
administrative and statistical purposes only, and does not contain any filings.

hearing is warranted. The Court further finds that Hodivsky's § 2255 motion (Doc# 117) is **DENIED** and **DISMISSED with prejudice**.

## I.   *Background*

On March 28, 2019, the grand jury for this judicial district returned a one-count indictment against Hodivsky. (Doc# 18). On April 24, 2019, the grand jury returned a three-count superseding indictment charging him with one count of advertising or noticing of child pornography in violation of 18 U.S.C. § 2251(d) (Count One); one count of  distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) (Count Two); and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Three). (*See* Doc# 23). Hodivsky, at all times in this Court represented by retained counsel,[2] was arraigned on the superseding indictment on May 3, 2019, and entered a plea of not guilty to all charges. (*See* Doc# 28). On May 13, 2019, Hodivsky filed a motion to suppress evidence obtained from a search of his cell phone, along with any evidence derivative of that search. (*See* Doc# 37). The Government filed a response in opposition to the motion (*see* Doc# 45), and after holding a hearing, the Court denied the motion to suppress on June 21, 2019. (*See* Doc# 57).

---

[2] Michael Pylant appeared as Hodivsky's retained counsel at his March 8, 2019 initial appearance on the criminal complaint initiating the above-styled criminal action. (*See* Doc# 12). Daniel R. Stankoski, Jr. entered his appearance as additional retained counsel on April 4, 2019, a week after the initial indictment was returned. (*See* Doc# 20). Pylant and Stankoski are collectively referred to herein as "trial counsel."

On June 27, 2019, Hodivsky changed his plea and entered a plea of guilty to Counts One and Three of the superseding indictment, pursuant to a written plea agreement. (*See* Docs# 59, 60, 61). On September 27, 2019, the Court sentenced Hodivsky to 360 months' imprisonment followed by 15 years of supervised release, as well as various monetary penalties. (*See* Docs# 72, 101). Consistent with the terms of the plea agreement, Count Two of the superseding indictment was dismissed on motion of the Government. (*See id.*).

Hodivsky appealed the judgment (*see* Docs# 77, 79, 82), and new counsel was appointed to represent him on appeal. (*See* Doc# 95). On September 4, 2020, the Eleventh Circuit Court of Appeals issued an opinion granting the Government's motion to dismiss Hodivsky's direct appeal, finding that the issues raised were barred by the appeal waiver in his plea agreement. (See Doc# 102). That order was made the final judgment of the appellate court on October 5, 2020. (*See* Doc# 103). Hodivsky subsequently filed the present § 2255 motion (Doc# 117).

## II.    *Legal Standards*

### a.    **General Standards of Review under § 2255**

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). However, "[o]nce the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his

federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164, 102 S.

Ct. 1584, 71 L. Ed. 2d 816 (1982). "[A] collateral challenge, such as a § 2255 motion,

may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225,

1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)).

"Because collateral review is not a substitute for a direct appeal, the general rules

have developed that: (1) a defendant must assert all available claims on direct

appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of

constitutional rights and for that narrow compass of other injury that could not

have been raised in direct appeal and would, if condoned, result in a complete

miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote

omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files
> and records of the case conclusively show that the prisoner is entitled to
> no relief, the court shall ... grant a prompt hearing thereon, determine
> the issues and make findings of fact and conclusions of law with respect
> thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary
> hearing if he "alleges facts that, if true, would entitle him to relief."
> *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting
> *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A]
> petitioner need only *allege*—not prove—reasonably specific, non-
> conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6.
> However, a district court need not hold a hearing if the allegations are
> "patently frivolous," "based upon unsupported generalizations," or
> "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553
> (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979));
> *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004)
> ("Because the ... affidavits submitted by Lynn amount to nothing more
> than mere conclusory allegations, the district court was not required to
> hold an evidentiary hearing on the issues and correctly denied Lynn's §
> 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted). *Accord Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).  In making this determination, a court must "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255." *Winthrop-Redin*, 767 F.3d at 1215.

### b.    Effect of Guilty Plea

The " 'concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.' " *Bousley v. United States*, 523 U.S. 614, 621, 118 S. Ct. 1604140 L. Ed. 2d 828 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784, 99 S. Ct. 2085, 60 L. Ed. 2d 634 (1979)). " 'A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.' " *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008) (quoting *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam)). *See also, e.g.*, *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("'A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.'" (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam)); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) (" 'Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction.' " (quoting *United States v. Bonilla,* 579 F.3d 1233, 1240 (11th Cir. 2009)). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may

5

not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984). Therefore, when, as here, a § 2255 motion is filed collaterally challenging convictions obtained pursuant to a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989). *See also Bousley*, 523 U.S. at 618 ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)).

"[P]lea bargaining retains its benefits of certainty and efficiency only if dispositions by guilty plea are accorded a great measure of finality. While § 2255 exists to safeguard a person's freedom from detention in violation of constitutional guarantees,…more often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea. As a result, the representations of the defendant, his lawyer, and the prosecutor at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Winthrop-Redin*, 767 F.3d at 1216 (citations and quotations omitted). When a defendant challenging the knowing and voluntary nature of his plea has "made statements under oath at a plea colloquy, 'he bears a heavy burden to show

his statements were false.' " *Id.* at 1217 (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam)).

### c.    Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).  Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).

" 'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United*

*States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]' " *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g.*, *Burt v. Titlow*, 571 U.S. 12, 24, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance…"). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence,"…in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind that counsel's function, as elaborated

in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (citing *Strickland*, 466 U.S. at 689-91) (citations and quotations omitted).

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.' " *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting *McMann[ v. Richardson]*, 397 U.S. [759,] 770, 90 S. Ct. [1441,] 1448[ (1970)]). The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *Slicker v. Dugger*, 878 F.2d 1380, 1381 n.1 (11th Cir. 1989) (per curiam); *Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir. 1989); *McCoy v. Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986) (per curiam)…

> …

> …*Hill* clarified the *Strickland* second or "prejudice" requirement in the context of guilty pleas: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S. Ct. at 370; *Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (per curiam); *see Long v. United States*, 883 F.2d 966, 968 n.4 (11th Cir. 1989) (per curiam); *Agan v. Dugger*, 835 F.2d 1337, 1340 n.6 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205, 108 S. Ct. 2846, 101 L. Ed. 2d 884 (1988); *see also Holmes*, 876 F.2d at 1553, *Slicker v. Wainwright*, 809 F.2d 768, 770 (11th Cir. 1987) (These cases were remanded to the district court to determine if accurate, rather than incorrect, information by the defense counsel as to the length of sentence would have changed the defendant's plea.); *cf. Betancourt v. Willis*, 814 F.2d 1546, 1549 (11th Cir. 1987) (This court affirmed the district court's granting a habeas corpus petition based upon its conclusion that petitioner's plea was not voluntary and that his counsel provided ineffective assistance because the evidence was "uncontroverted that petitioner was completely unaware of the ultimate consequences of his plea because his counsel misrepresented the existence of a sentence reduction agreement."). The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59, 106 S. Ct. at 370; *McCoy*, 804 F.2d at 1198–99.

The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973); *see Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir.) (per curiam) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process."), *cert. denied*, 469 U.S. 837, 105 S. Ct. 134, 83 L. Ed. 2d 74 (1984). The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions" in his counsel's advice regarding the plea. *McMann*, 397 U.S. at 774, 90 S. Ct. at 1450; *Tollett*[ *v. Henderson*], 411 U.S. [258,] 267, 93 S. Ct. [1602,] 1608[ (1973)]; *see Hill*, 474 U.S. at 56, 106 S. Ct. at 369 ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). Without "reasonably effective assistance of counsel in connection with the decision to plead guilty," a defendant cannot enter a knowing and voluntary plea because the plea does not represent an informed choice. *McCoy*, 804 F.2d at 1198; *Scott*[ *v. Wainwright*], 698 F.2d [427,] 429[ (11th Cir. 1983)]. Based upon his familiarity with the facts and law, defense counsel must advise the defendant. *Scott*, 698 F.2d at 429. "Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but it must be within the realm of competence demanded of attorneys representing criminal defendants." *Id.* (emphasis added); *see McMann*, 397 U.S. at 771, 90 S. Ct. at 1449; *Long*, 883 F.2d at 969.

11

> The Supreme Court has recognized that the decision to plead guilty may occur without all of the state's evidence and necessarily takes place without knowledge of all facts revealed by witnesses at trial. *McMann*, 397 U.S. at 769–70, 90 S. Ct. at 1448. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); *Downs–Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. *Tafero*, 796 F.2d at 1320; *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986), *cert. denied*, 481 U.S. 1042, 107 S. Ct. 1986, 95 L. Ed. 2d 825 (1987)…

*Stano v. Dugger*, 921 F.2d 1125, 1149-51 (11th Cir. 1991) (en banc) (footnote omitted).[3] In claiming prejudice under *Strickland* and *Hill*, "[a] movant must [also] allege facts that would prove that a decision not to plead guilty 'would have been rational under the circumstances.' " *Hernandez v. United States*, 778 F.3d 1230,

---

[3] *Accord, e.g., Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993) ("The Supreme Court has held 'that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.' *Hill*, 474 U.S. at 58, 106 S. Ct. at 370. Under the *Strickland* test, Garrett initially must show 'that counsel's representation fell below an objective standard of reasonableness.' *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). While it need not be errorless, counsel's advice *'must be within the realm of competence demanded of attorneys representing criminal defendants.' Stano*, 921 F.2d at 1151. Providing meaningful advice on the options available to a defendant obligates counsel 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. *Hill* modified the second part of the *Strickland* test in the context of a guilty plea. Garrett 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' 474 U.S. at 59, 106 S. Ct. at 370.").

1234 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)).

### III.  *Analysis*

Hodivsky asserts four grounds for relief under § 2255, each alleging some form of ineffective assistance of trial counsel. The undersigned addresses each in turn, and finds that Hodivsky is not entitled to relief or an evidentiary hearing on any of them.

### a.    Ground One – Failure to Adequately Explain Appeal Waiver

Hodivsky first alleges that his trial counsel were ineffective for erroneously advising him that the appeal waiver in his plea agreement would not bar him from appealing the denial of his motion to suppress. This claim is procedurally barred because it attempts to relitigate an issue already decided on direct appeal. Alternatively, any error by counsel was rendered harmless by the Court's colloquy with Hodivsky at the change-of-plea hearing.

> "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' " *Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (citation omitted). It follows, therefore, that an appeal waiver or collateral attack waiver which is part of a guilty plea is unenforceable if the plea itself is involuntary or unintelligent. Waivers of appeal must stand or fall with the agreements of which they are a part. If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored. If the agreement is involuntary, or otherwise unenforceable, then the defendant is entitled to appeal.

*United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015) (quotation omitted). However, "[t]he district court is not required to reconsider claims of error

13

that were raised and disposed of on direct appeal. Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (citation and quotation omitted). *See also, e.g.*, *Buckelew v. United States*, 575 F.2d 515, 517–18 (5th Cir. 1978) ("a matter need not be reconsidered on a section 2255 motion if it has already been determined on direct appeal"); *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that we rejected in his direct appeal.").

On direct appeal, Hodivsky, through appointed appellate counsel, argued that this Court erred in denying his motion to suppress, and that the appeal waiver did not preclude appealing that issue. (*See* USCA11 Case No. 19-14844, Doc# 22). In response, on August 10, 2020, the Government filed a motion to dismiss the appeal, based on both his entry of an unconditional guilty plea[4] and the appeal waiver in his

---

[4]

"By entering a voluntary unconditional guilty plea, a defendant waives all nonjurisdictional defects in the proceedings." [*United States v. Patti*, 337 F.3d 1317,] 1320[ (11h Cir. 2003)]. A district court's refusal to suppress evidence is nonjurisdictional and is waived by a guilty plea. *United States v. McCoy*, 477 F.2d 550, 551 (5th Cir. 1973) (per curiam). "A defendant who wishes to preserve appellate review of a non-jurisdictional defect while at the same time pleading guilty can do so only by entering 'a conditional plea' in accordance with [Federal Rule of Criminal Procedure] 11(a)(2)." *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997). Rule 11 provides that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an

plea agreement. (*See* USCA11 Case No. 19-14844, Doc#30-2). In support of the second ground, the Government expressly cited to provisions of the plea agreement and Hodivsky's statements at his change-of-plea hearing as demonstrating that Hodivsky knowingly and voluntarily waived the right to appeal except in limited circumstances that did not cover the motion to suppress. (*See id.*). Hodivsky filed no response to the motion, and on September 4, 2020, the Eleventh Circuit granted the motion to dismiss the appeal "pursuant to the appeal waiver in [Hodivsky]'s plea agreement." (USCA11 Case No. 19-14844, Doc#32. *See also* Doc# 102).[5] In so ruling, the order noted that an "appeal waiver will be enforced if it was made knowingly and voluntarily…" (*Id.* (citing *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993)).[6]  Thus, on direct appeal, the Eleventh Circuit necessarily, if implicitly, determined that Hodivsky's appeal waiver was made knowingly and voluntarily, and Hodivsky is procedurally barred from re-litigating that issue in his § 2255 motion.

---

appellate court review an adverse determination of a specified pre-trial motion." Fed. R. Crim. P. 11(a)(2).

*United States v. Byrd*, 166 F. App'x 460, 461–62 (11th Cir. 2006) (per curiam) (unpublished).

[5] *See* Fed. R. App. P. 27(a)(3)(A) ("Any party may file a response to a motion…The response must be filed within 10 days after service of the motion unless the court shortens or extends the time.").

[6] "In order to prevail in its argument that this court should enforce a sentence appeal waiver, the…government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Bushert*, 997 F.2d at 1351.

Alternatively, even assuming Hodivsky's trial counsel did erroneously advise him that the plea agreement would not bar him from appealing the denial of his motion to suppress, any prejudice was cured by the plain terms of the plea agreement and the Court's colloquy with Hodivsky at his change-of-plea hearing. The section of his plea agreement entitled "LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK" states, in relevant part: "As part of the bargained-for exchange represented by this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings." (Doc# 59 ¶ 27, PageID.246). The only noted exceptions to that appeal waiver are: "The defendant reserves the right to timely file a direct appeal challenging: (1) any sentence imposed in excess of the statutory maximum; (2) any sentence which constitutes an upward departure or variance from the advisory guideline range. The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion." (*Id.*, PageID.246-247). The written plea agreement further advised that "[t]his document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties." (*Id.* ¶ 33, PageID.248).

16

At Hodivsky's change-of-plea hearing, the Court expressly questioned him about that appeal waiver as follows:

> THE COURT: …Now, the plea agreement also provides that you are waiving your right to appeal this conviction and the sentence. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: The only reason you could appeal is if I go above the guidelines, you receive ineffective assistance of counsel, or I went above the statutory maximum. Do you understand?
>
> THE DEFENDANT: Yes, ma'am.

(Doc# 63, PageID.260-261). The Court also affirmed with Hodivsky that he had "read that plea agreement and discussed it with [his] attorney before [he] signed it[.]" (*Id.*, PageID.261).

Thus, both the plea agreement and the Court's colloquy put Hodivsky on notice that he was waiving the right to appeal except where his sentence exceeded either the statutory maximum or the guidelines range, or where he claimed ineffective assistance of counsel. In light of these clear statements, Hodivsky could not reasonably have interpreted the appeal waiver as also exempting his motion to suppress. These statements therefore cured any prejudice resulting from any purported statements by his counsel to the contrary during plea negotiations,[7] and

---

[7] *See Kealy v. United States*, 722 F. App'x 938, 946 (11th Cir. 2018) (per curiam) (unpublished) ("Between the plea agreement and the Rule 11 colloquy, Kealy received sufficient notice that her offense made her subject to deportation, and thus she cannot show prejudice. A defendant is not at liberty to ignore the documents she signs or the instructions provided by the district court. Kealy's purported misunderstanding had nothing to do with the statutory consequences of her plea,

Hodivsky has failed to meet his "heavy burden to show that his statements were false" when he affirmed that he understood the appeal waiver at the change-of-plea hearing. *Winthrop-Redin*, 767 F.3d at 1216.

### b.    Ground Two – Failure to Advise that Hodivsky Would Have Received the Same Sentence Had He Proceeded to Trial

---

which were entirely clear from the plea agreement and the colloquy."); *Stillwell v. United States*, 709 F. App'x 585, 590 (11th Cir. 2017) (per curiam) (unpublished) ("Stillwell cannot establish prejudice because both the plea agreement and the district court informed him that he could not ʳely on couˢsel's estimated sentence, that the court retained all sentencing discretion, and that the conduct in Counts 2 and 3 would be considered at sentencing. Because the district court explained the sentencing and appeal-waiver provisions of the plea agreement to Stillwell, and Stillwell stated under oath that he understood them, any misunderstanding created by counsel's advice was remedied by the district court. *Cf. Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (concluding that defendant failed to show prejudice because any misinformation from counsel regarding plea consequences was 'cured' by district court's colloquy)."); *United States v. Wilson*, 245 F. App'x 10, 11–12 (11th Cir. 2007) (per curiam) (unpublished) ("As the district court implicitly determined, even if Wilson's counsel was in some way deficient in advising Wilson of the possible sentencing implications from his guilty plea, Wilson cannot establish prejudice. During the plea colloquy, the district court itself explained to Wilson—in detail— the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting Wilson's guilty plea. Thus, any failure on the part of Wilson's counsel to clearly explain the possible punishment was cured by the district court." (footnote omitted)). *Cf. United States v. Boyd*, 975 F.3d 1185, 1192 (11th Cir. 2020) ("While the district court may not have discussed all the exceptions to the waiver—that Boyd could appeal a sentence that exceeded the guideline range, that he was released from the waiver if the government appealed, and that he could still pursue an ineffective-assistance-of-counsel claim—its failure to question Boyd about all of the possible exceptions to the waiver does not alter whether the waiver was made knowingly and voluntarily, as the touchstone for assessing this question is whether it was 'clearly convey[ed] to [the defendant] that he was giving up his right to appeal under *most* circumstances.' " (quoting *Bushert*, 997 F.2d at 1352-53)).

Hodivsky next claims that his trial counsel were ineffective for advising him to plead guilty because, he believes, "if [he] proceeded to trial [he] would have received the same 30 years, because count one carried a statutory maximum of 30 years." (Doc# 117-2 ¶ 3, PageID.705). This claim, however, rests on an inaccurate premise—Hodivsky is wrong to believe that he faced no greater sentencing exposure going to trial than pleading guilty as he did.

As he correctly observes, under Count One, alleging a violation of 18 U.S.C. § 2251(d), Hodivsky, having no prior relevant criminal history, faced a maximum imprisonment term of 30 years. *See* 18 U.S.C. § 2251(e). However, Hodivsky fails to account for the sentences he faced for being convicted on the other two counts. Under Count Two, alleging a violation of 18 U.S.C. § 2252A(a)(2), he faced a maximum imprisonment term of 20 years, again due to having no prior relevant criminal history. *See* 18 U.S.C. § 2255A(b)(1). And under Count Three, alleging a violation of 18 U.S.C. § 2252A(a)(5)(B), he also faced a maximum imprisonment term of 20 years because, as stated in his Presentence Investigation Report (Doc# 68), his offense conduct included possessing "image[s] of child pornography [which] involved a prepubescent minor or a minor who had not attained 12 years of age…" *See* 18 U.S.C. § 2255A(b)(2). Had Hodivsky not pleaded guilty, proceeded to trial, and been convicted on all counts, Hodivsky risked a total imprisonment term of up to 70 years, had the Court imposed the maximum term allowed for each count and chosen to run those sentences consecutively to each other instead of concurrently. *See* 18 U.S.C. § 3584(a)-(b) ("If multiple terms of imprisonment are imposed on a

defendant at the same time,…the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively…The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in [18 U.S.C.] section 3553(a).").

Hodivsky's plea agreement thus cut 20 years from his maximum potential sentence of imprisonment simply by agreeing to the dismissal of Count Two. The agreement, though, went further to benefit him. Had the agreement left the ultimate sentencing determination up to the Court, Hodivsky would have still faced the possibility of 50 years' imprisonment, which was also the high end of the sentencing guideline range calculated in Hodivsky's Presentence Investigation Report (*see* Doc# 68 ¶ 63, PageID.305 ("Based upon a total offense level of 42 and a criminal history category of I, the guideline imprisonment range is 360 to life. However, the statutorily authorized maximum sentences are less than the maximum of the applicable guideline range; therefore, the guideline range is 360 months to 600 months."). However, Hodivsky's plea agreement was entered into under Federal Rule of Criminal Procedure 11(c)(1)(C),[8] meaning that, once the

---

[8] "If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will…. agree that a specific sentence or sentencing range is the

Court accepted it, the Court was bound to impose the agreed-upon sentence,[9] which was "a sentence of THIRTY (30) years imprisonment…as to Counts One and Three…" (Doc# 59 ¶ 16, PageID.242). That provision guaranteed that Hodivsky would be sentenced at the low end of his guideline imprisonment range. Thus, trial counsel acted well within the bounds of reasonable performance by advising Hodivsky to accept the plea agreement rather than risk a much larger imprisonment sentence at trial.

### c.    Ground Three – Failure to Challenge the Factual Basis for Permitting a Finding of Guilt on Count One

Hodivsky next claims that trial counsel were ineffective for allowing him to plead guilty to Count One because the record did not contain a sufficient factual basis

---

appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)." Fed. R. Crim. P. 11(c)(1)(C).

[9] *See* Fed. R. Crim. P. 11(c)(4) ("If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment."); *United States v. Vallejo*, 463 F. App'x 849, 851 (11th Cir. 2012) (per curiam) (unpublished) ("If the court accepts a Rule 11(c)(1)(C) plea agreement, the court is bound by the recommendation…The acceptance of a Rule 11(c)(1)(C) plea 'agreement is identical to imposition of punishment; if the court does not consider the agreement fair, it simply rejects the entire plea agreement.' *United States v. Dean*, 80 F.3d 1535, 1541 (11th Cir.) (addressing Rule 11(c)(1)(C)'s precursor), *modified*, 87 F.3d 1212 (1996). Like the government and defendant, the court is bound by a plea agreement that it accepts. *United States v. Yesil*, 991 F.2d 1527, 1532 (11th Cir.1992). A district court has no power to modify a plea agreement that it has approved. *Dean*, 80 F.3d at 1541. If the court rejects a Rule 11(c)(1)(C) plea agreement, it must 'give the defendant an opportunity to withdraw the plea.' Fed. R. Crim. P. 11(c)(5)(B).").

for a finding of guilt. *See* Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.").

Count One charged a violation of 18 U.S.C. § 2251(d), which states in relevant part as follows:[10]

> **(1)** Any person who, in a circumstance described in paragraph (2), knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering--
>
>> **(A)** to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; …
>
> shall be punished as provided under subsection (e).
>
> **(2)** The circumstance referred to in paragraph (1) is that--
>
>> **(A)** such person knows or has reason to know that such notice or advertisement will be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mailed; or
>>
>> **(B)** such notice or advertisement is transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mailed.

Hodivsky claims that he "instructed Mr. Stakoski [sic] to object to the advertising charge on count one during sentencing because [his] conduct did not arise to advertising under the statute of 18 U.S.C. § 2251(d)." (Doc# 117-2 ¶ 6, PageID.706). More specifically, he argues that "his criminal conduct only included

---

[10] The undersigned includes only those provisions of § 2251(d) that track the wording of Count One. (*See* Doc# 23, PageID.88).

receiving , exhanging [sic], communicating with other users, and possessing child pornography[,]" and that "[n]owhere in the factual basis (the elements and facts) of his guilty plea, does the government allege that [he] was in fact advertising such notice on the internet to buy, display, distribute, and produce child pornography." (Doc# 117-3, PageID.715-716). As Hodivsky sees it, his "conduct relies around the fact that he communicated with other users in the internet who gave him links to websites where child pornography could be downloaded; communicated with other users who provided him with child pornography videos; communicated with other users whom he exchanged e mail addresses with." (*Id.*, PageID.716). He argues that "[t]his conduct is extraneously distant from what the government must prove under § 2251(d)." (*Id.*). Hodivsky cites no authority in support of this argument.

The Government's response highlights Hodivsky's use of the MEGA app as outline in the factual resume accompanying his plea agreement as providing an adequate factual basis that he "noticed" or "advertised" § 2251(d). The factual resume described that conduct as follows:

> Upon…examination of [Hodivsky's cellular phone], SA Middleton discovered the MEGA app, which HODIVSKY was utilizing to communicate with other consumers of child pornography and to trade images of child pornography. SA Middleton did gain access to the MEGA app, which documented HODIVSKY's repeated and consistent communication with other app users to share child pornography. Through the messaging feature in the app, SA Middleton was able to observe messages to multiple other users beginning in October 16, 2016 and continuing until January 20, 2019. In those messages HODIVSKY would exchange images of child pornography with other users. HODIVSKY would both request specific series of child pornography images as well as provide links to child pornography images. The users

also exchange addresses for particular email accounts and passwords,
where it is believed that child pornography images were stored.

(Doc# 60, PageID.252-253).

Trial counsel was not ineffective for failing to object to the factual basis for
Hodivsky's guilty plea to Count One. At the time Hodivsky was indicted, pleaded
guilty, and was sentenced, binding Eleventh Circuit case law held that " 'notice,' for
purposes of § 2251(d)(1), [wa]s broad enough to include individually directed text
messages" (i.e., "one-on-one communications") like the ones Hodivsky engaged in
with other MEGA users, and did not "require[] a public or group component…"
*United States v. Caniff* (*Caniff I*), 916 F.3d 929, 935-36 (11th Cir. Feb. 15, 2019).
Thus, trial counsel's objection to the factual basis of Count One at the change-of-
plea hearing or at sentencing would have been meritless. However, on April 9, 2020,
the *Caniff I* panel vacated its prior opinion and substituted in its place *United
States v. Caniff* (*Caniff II*), 955 F.3d 1183 (11th Cir. 2020) (per curiam), which held
that neither the terms "advertisement" nor "notice" covered purely private, person-
to-person text messages. *See* 955 F.3d at 1187-93. However, the Eleventh Circuit
has "held many times that reasonably effective representation cannot and does not
include a requirement to make arguments based on predictions of how the law may
develop." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) (quotation
omitted). *Accord, e.g., Geter v. United States*, 534 F. App'x 831, 836 (11th Cir. 2013)
(per curiam) (unpublished) ("It is well-settled that an attorney's failure to anticipate
a change in the law will not support a claim of ineffective assistance of appellate

24

counsel… The rule applies even if the claim, based upon anticipated changes in the law, was reasonably available at the time counsel failed to raise it." (citing cases)). [11]

### d.    Ground Four – Failure to Address a Conflict of Interest

Finally, Hodivsky claims that his trial counsel were ineffective because they convinced him to waive a conflict of interest involving Stankoski without adequately explaining the significance of that conflict and the ramifications of waiving it, thus allegedly depriving him of his right to conflict-free counsel. *See Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."). The alleged conflict of interest was that Stankoski served as a municipal judge for Summerdale, Alabama, the same city whose police department began the investigation into Hodivsky leading to the subject charges. Per Hodivsky, an investigator with the Summerdale Police Department "seized Mr. Hodivsky's phone, and submitted an affidavit to search the contents of the seized phones." (Doc# 117-3, PageID.716).

At Hodivsky's change-of-plea hearing, the following exchange addressing the conflict he cites occurred prior to him entering his guilty plea:

> [PROSECUTOR]: I'm sorry, Your Honor. Before the Court begins its plea colloquy, the parties wanted to place a matter on the record.
>
> …

---

[11] The Court notes that the change in the law occurred while Hodivsky's appeal was pending. But as the United States points out, Hodivsky's petition did not allege ineffective assistance of appellate counsel.  Nor even given the leniency granted to a pro se petitioner can this Court construe his claim as such.

MR. PYLANT: And, Your Honor, I can do that at this time if I may. Pursuant to an agreement between the parties, my cocounsel in this case, Rob Stankoski, is a judge in the town of Summerdale, in that municipality. And when this investigation initiated, Summerdale Police Department was the investigating agency.

And in my conversations with the prosecution, we are agreeing to waive any perceived conflict that might create and waive any appellate remedy that Mr. Hodivsky might seek specific to that issue. And we do so at this time.

[PROSECUTOR]: No, Your Honor. Kind of. But we learned of that situation. I spoke in detail to Mr. Stankoski, and he indicated that he had researched the matter. There was no actual or apparent conflict and that he had discussed the matter with Mr. Hodivsky and that Mr. Hodivsky waived any possible conflict. And we just wanted Mr. Hodivsky to acknowledge that and place it on the record.

MR. PYLANT: And, Judge DuBose, in response to that, I can tell you I wholeheartedly agree that there is no conflict that exists after my research. But, again, in terms of should that ever arise, Mr. Hodivsky is here to waive that today.

THE COURT: Okay. All right. Well, that's put on the record then.

Mr. Hodivsky, do you affirm that's correct?

THE DEFENDANT: Yes, ma'am.

(Doc# 63, PageID.256-257).

In *Cuyler v. Sullivan,* 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), the Supreme Court held that to establish an ineffective assistance of counsel claim stemming from a conflict of interest where there was no objection at trial, a defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S. Ct. 1708. Two steps are required in this analysis: determining first, whether an actual conflict existed, and then, whether the conflict had an adverse effect on representation. *Buenoano v. Singletary,* 74 F.3d 1078, 1086 (11th Cir. 1996). According to *Cuyler,* a conflict must be actual, not merely speculative; the mere possibility of

conflict does not constitute a Sixth Amendment violation. *Id.; McConico v. Alabama,* 919 F.2d 1543, 1546 (11th Cir. 1990); *Smith v. White,* 815 F.2d 1401, 1404 (11th Cir. 1987), *cert. denied,* 484 U.S. 863, 108 S. Ct. 181, 98 L. Ed. 2d 133 (1987)…

[The Eleventh Circuit] ha[s] adopted the following test to determine whether actual conflict can be discerned:

> We will not find an actual conflict unless [the defendant] can point to specific instances in the record to suggest an actual conflict or impairment of [her interest]. The defendant must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence that favors an interest in competition with that of the defendant. If [the attorney] did not make such a choice, the conflict remained hypothetical.

*Buenoano,* 74 F.3d at 1086 n.6 (quoting *Smith,* 815 F.2d at 1404 (internal citations and quotation marks omitted)).

*Ferrell v. Hall*, 640 F.3d 1199, 1244 (11th Cir. 2011). *See also United States v. Williams*, 902 F.3d 1328, 1332 (11th Cir. 2018) ("A defendant claiming that his counsel rendered ineffective assistance due to a conflict of interest must, except in rare cases, establish an 'actual conflict,' i.e., a 'conflict [that] adversely affected his counsel's performance.'" (quoting *Mickens v. Taylor*, 535 U.S. 162, 174, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002)).[12]

---

[12] "Under *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978), an 'automatic reversal rule'—pursuant to which we conclusively presume that the conflict affected counsel's representation—applies 'only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict.' " *Williams*, 902 F.3d at 1332 n.3 (quoting *Mickens*, 535 U.S. at 168).

Hodivsky's § 2255 motion falls far short of making such a showing, neither pointing to "specific instances…to suggest an actual conflict or impairment of" his interest, nor alleging how the conflict had an "adverse effect" on Stankoski's representation. As was noted previously, a § 2255 movant must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief" in order to be entitled to an evidentiary hearing; "unsupported generalizations" are insufficient to warrant an evidentiary hearing, much less relief, under § 2255. *Winthrop-Redin*, 767 F.3d at 1216.

Because Hodivsky has not shown entitlement to relief or an evidentiary hearing on any of his grounds, his § 2255 motion is **DENIED** and **DISMISSED with prejudice**.

### e.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding.  Rule 11(a) of the Rules Governing § 2255 Proceedings.  "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."  28 U.S.C.A. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484,

120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Where habeas relief is denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id. See also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)). In all cases, "[a] certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). While "a COA does not require a showing that the appeal will succeed[,]" a "prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 337-38 (quotations omitted).

Upon due consideration, Hodivsky is not entitled to a Certificate of Appealability in conjunction with the denial of his present § 2255 motion, because reasonable jurists would not debate whether his § 2255 motion should be resolved in a different manner or that any of the issues presented is adequate to deserve

encouragement to proceed further.

### f.    Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C. § 1915(a)(3).

> A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is *860 "without arguable merit either in law or fact." *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester,* 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 515 (11th Cir. 1991).

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished).

Having considered the issues raised as set forth above, the Court certifies that any appeal by Hodivsky of the denial of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[13]

### IV.    *Conclusion*

In accordance with the foregoing analysis, Hodivsky's Motion to Vacate, Set

---

[13] The petitioner may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

Aside, or Correct Sentence under 28 U.S.C. § 2255 dated November 22, 2021 (Doc# 117), is **DENIED** and **DISMISSED with prejudice**, without an evidentiary hearing.

Hodivsky is not entitled to a Certificate of Appealability in relation to the dismissal of the present § 2255 motion. The Court certifies that any appeal by Hodivsky of the denial of the present § 2255 motion would be without merit and therefore not taken in good faith, thus he is not entitled to proceed *in forma pauperis* on appeal.

Judgment shall be entered by separate document under Federal Rule of Civil Procedure 58.[14]

DONE and ORDERED this 6th day of February 2025.

**/s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[14] *See* Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The Federal Rules of Civil Procedure…, to the extent that they are not inconsistent with any statutory provision or these rules, may be applied to a proceeding under these rules."); *Sassoon v. United States*, 549 F.2d 983 (5th Cir. 1977) (applying Rule 58's separate-document requirement in a § 2255 proceeding); United States v. Hassebrock, 21 F.4th 494, 497 (7th Cir. 2021) (in holding that Rule 58 applied to *coram nobis* proceedings, noting that "[m]any [other] circuits have applied Rule 58 to § 2255 motions").